IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| VALERIE RILEY,           )<br>                              )<br>    Plaintiff,           )<br>                              )<br>    v.                      )<br>                              )<br>SOUTHERN CARE, INC., d/b/a           )<br>SOUTHERN CARE SOUTH CAROLINA,  )<br>INC.,                        )<br>                              )<br>    Defendant.              )<br>_____) | C.A. No. : 3:13-cv-00357-CMC<br><br>OPINION AND ORDER<br>GRANTING MOTION TO<br>DISMISS |

This matter is before the court on Defendant's motion to dismiss Plaintiff's claims for wrongful termination in violation of public policy and for breach of the implied warranty of good faith and fair dealing. Dkt. No. 5 (seeking dismissal of these claims under Fed. R. Civ. P. 12(b)(6)). For the reasons stated below, Defendant's motion is granted.

**STANDARD**

A motion under Federal Rule of Civil Procedure 12(b)(6) should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of her claim that entitles her to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Although the court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions [the plaintiff would draw] from the facts." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may also disregard any "unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

The Rule 12(b)(6) standard has often been expressed as precluding dismissal unless it is certain that the plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs., Inc. v. Markari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nonetheless, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoted in *Giarratano*, 521 F.3d at 302).

Thus, in applying Rule 12(b)(6), the court also applies the relevant pleading standard. Despite the liberal pleading standard of Rule 8, a plaintiff in any civil action must include more than mere conclusory statements in support of a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court need only accept as true the complaint's *factual* allegations, not its legal conclusions); *see also Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Estate Companies, Inc.*, 679 F.3d 278 (4th Cir. 2012) for proposition a plaintiff need not forecast *evidence* sufficient to prove the elements of a claim, but must allege sufficient *facts* to establish those elements).)

**COMPLAINT**

Taking the allegations of the complaint in the light most favorable to Plaintiff, the facts are as follows. Defendant provides hospice care through a variety of employees including licensed practical nurses ("LPNs") and registered nurses ("RNs"). The LPNs are supervised by RNs.

Plaintiff was employed by Defendant as an LPN case coordinator from April 29, 2003, until she was terminated on August 26, 2010. Dkt. No. 1-1 ¶¶ 10, 46, 53. Plaintiff's termination followed several internal reports she made about improper patient care by two RNs, Reuben Scott and Judy Johnson, both of whom had supervisory authority over Plaintiff during some portion of her last year of employment. *Id*. ¶¶ 14, 22 (referring to Scott's hiring in July 2009, and Johnson's hiring in December 2009).

Plaintiff's first alleged difficulty with Scott occurred in March 2010, after Plaintiff requested IV hydration for a patient in accordance with the family's wishes. Complaint ¶¶ 17-20. According to Plaintiff, Scott became visibly angry with Plaintiff after he learned that Plaintiff had sought and obtained approval of this request from the physician. *Id.* Plaintiff further alleges that Scott retaliated against her after this incident by restricting information Plaintiff would receive regarding patients. *Id.* ¶ 20.

Plaintiff's next difficulty involved Johnson. *Id.* ¶¶ 22-35. Plaintiff alleges that "between February 2010 and April 2010 she consistently reported Judy Johnson to Defendant's Executive Director [for] aggressive behavior toward patients in medication administration." *Id.* ¶ 29. In May 2010, Plaintiff called the Executive Director and explained "that Johnson was not providing proper patient care, was violating Defendant Southern Care's policies and procedures, was violating state law, and was violating the physician's plan of care with respect to her patients." *Id.* ¶ 30.

Early in the following month, on June 7, 2010, Plaintiff was given a patient assignment schedule. Plaintiff objected to the schedule because "all staff made out their own patient assignments," and "accused both Scott and Johnson of retaliation and an intent to get her fired based upon her prior Complaints." *Id.* ¶ 32. Plaintiff was "written up by Scott for insubordination" as a result of the June 7, 2010 "incident." *Id.* ¶ 33. Thereafter, Defendant's Executive Director "told Plaintiff that she must do what Scott tells her to do at all times." *Id.* ¶ 34. Johnson, in turn, "routinely changed Plaintiff's work schedule over the phone [and without other prior notice] making it difficult for Plaintiff to comply with her work schedule." *Id.* at 35.

In late July and early August 2010, Plaintiff and Johnson disagreed as to whether a patient should be forced to take pain medications. *Id.* ¶¶ 37-46. According to Plaintiff, Johnson forced the patient to take liquid morphine over her objection. Plaintiff reported this incident to Scott, who

"replied that the woman had no quality of life left according to Judy Johnson's report to him." *Id.* ¶ 40. Plaintiff was, thereafter, able to treat the paient without morphine for four days. *Id.* ¶ 41. On the fifth day, Johnson administered a morphine-like drug to the patient by IV. *Id.* ¶ 42. Plaintiff reported the administration of the drug to Scott and Defendant's Executive Director, advising both "that what Johnson was doing to the elderly woman was illegal and against Defendant's policy." *Id.* at 42. According to Plaintiff, the patient subsequently lost consciousness and died as a result of Johnson's administration of the IV drug. *Id.* ¶ 46. Plaintiff reported her belief as to the cause of death to Scott within twenty-four hours of the incident. *Id.*

In August 2010, Plaintiff and Johnson were responsible for a patient who developed a bedsore while under their care. *Id.* ¶¶ 48-54. According to Plaintiff, Johnson scheduled Plaintiff to visit the patient weekly, but told the family Plaintiff was scheduled for daily visits. On August 22, 2010, Johnson called Plaintiff to advise her of the patient's death. *Id.* ¶ 52. Johnson commented that "she was glad that the patient had died because she was tired of dealing with the patient's daughter," to which Plaintiff responded "that the patient's daughter simply loved her father." *Id.* At some point during the same month, the family made a formal complaint about Plaintiff's care of the patient.

On August 26, 2010, Plaintiff was terminated, ostensibly because of poor work performance and the complaint relating to patient care referenced above. *Id.* ¶ 54. For present purposes, the court assumes without deciding that a reasonable inference may be drawn from the above allegations that the true reason for the termination was retaliation for Plaintiff's various complaints about Scott and Johnson's treatment of patients, which complaints were made to Scott or Defendant's Executive Director.

Under her first cause of action, wrongful termination in violation of public policy, Plaintiff asserts that she "is a person required under South Carolina law to report abuse, neglect, or exploitation of a vulnerable adult." *Id.* ¶ 58. She further alleges that she observed abuse and neglect by Defendant's employees and "attempted, in good faith" to report [those] abuses" and that she was terminated based on contrived reasons because of her attempted reports. *Id.* ¶ 60; *see also id.* ¶ 62 (alleging "Defendan[t] carried out a wrongful vendetta against Plaintiff in an attempt to cover up misconduct and violations of policy, procedure, and South Carolina law by employees of Defendant, which had been reported by Plaintiff.").

In addition to her claim for wrongful termination in violation of public policy, Plaintiff asserts three contract-based claims: breach of contract (second cause of action); breach of contract with fraudulent intent (third cause of action); and breach of the implied warranty of good faith and fair dealing (fourth cause of action).[1]

## DISCUSSION

**I.   Wrongful Termination**

**Case Law.**  Under South Carolina law, employment relationships are generally at will. *Prescott v. Farmers Tel. Coop., Inc.*, 516 S.E.2d 923, 925 (S.C. 1999). "[A]n at-will employee may be terminated at any time for any reason or no reason, with or without cause." *Stiles v. American Gen. Life Ins. Co.*, 516 S.E.2d 449, 450 (S.C. 1999). South Carolina recognizes several exceptions to this general rule, including when an employer terminates an employee for a reason that violates a clear mandate of public policy. *Ludwick v. The Minute of Carolina, Inc.*, 337 S.E.2d 213, 216 (S.C.

---

[1] The fourth cause of action appears to allege breach of the covenant of good faith and fair dealing implicit in the contract at issue in the second cause of action.

1985). "The determination of what constitutes public policy is a question of law for the courts to decide." *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 638 (S.C. 2011). "The public policy exception clearly applies in cases where either: (1) the employer requires the employee to violate the law, or (2) the reason for the employee's termination itself is a violation of criminal law." *Id.* at 637. However, "the public policy exception is not limited to these situations." *Id.*

**Defendant's opening argument.** Defendant argues that the first cause of action should be dismissed because Plaintiff's Complaint fails to state a claim for wrongful termination in violation of public policy. Specifically, Defendant argues that Plaintiff's claim must fail because she has "failed to cite or specify any particular public policy that prohibited [Defendant] from firing Plaintiff under the alleged circumstances." Dkt. No. 5-1 at 5. Defendant also argues that the fourth cause of action should be dismissed because it does not state an independent claim.

**Plaintiff's opposition.** In her response, Plaintiff quotes her first cause of action, which does not specify the source of the alleged public policy but does refer generally to state law duties to report abuse or neglect of vulnerable adults. Dkt. No. 9 at 3. After summarizing South Carolina case law relevant to a wrongful discharge claim (*id.* at 4-5), Plaintiff identifies S.C. Code Ann. § 43-35-25(A) as the source of relevant public policy. The portion of this statute quoted by Plaintiff reads as follows:

> A physician, nurse, dentist, optometrist, medical examiner, coroner, other medical, mental health or allied health professional, Christian Science practitioner, religious healer, school teacher, counselor, psychologist, mental health or intellectual disability specialist, social or public assistance worker, caregiver, staff or volunteer of an adult day care center or of a facility, or law enforcement officer having reason to believe that a vulnerable adult has been or is likely to be abused, neglected, or exploited shall report the incident in accordance with this section. Any other person who has actual knowledge that a vulnerable adult has been abused, neglected, or exploited shall report the incident in accordance with this section.

S.C. Code Ann. § 43-35-25(A).

Plaintiff does not address Defendant's motion to the extent it challenges the viability of Plaintiff's fourth cause of action. Thus, this argument is unopposed.

**Defendant's Reply**. On reply, Defendant argues the code section on which Plaintiff relies is inapplicable because it "narrowly applies only to employees and volunteers of adult day care centers and law enforcement officers and does not cover, or even reference, hospices (such as Southern Care). Dkt. No. 11 at 2. Defendant notes that Title 43 narrowly defines the term "facility" and argues that Title 43 is not applicable to hospices because such entities are specifically governed by Title 44. *Id.* at 3 nn. 3, 5. Defendant further argues that the regulations governing hospices (promulgated pursuant to S.C. Code § 44-71-60) include their own reporting requirements, which "do not require any hospice employees, including nurses, to report actual or perceived instances of patient abuse and/or neglect and further provide no job protection . . . for employees who report such misconduct." Dkt. No. 11 at 4. Finally, Defendant argues that Plaintiff cannot rely on company policies as establishing public policy.

**Absence of statutory or regulatory protection against retaliation.** To the extent Defendant argues that Plaintiff's claim fails due to the absence of any right to job protection in the relevant statute or regulation, its argument is misplaced. This is because a common law claim for wrongful termination in violation of public policy is *only* available when there is no corresponding statutory retaliation claim. *See, e.g., Barron,* 713 S.E.2d at 638; *Stiles v. American Gen. Life Ins. Co.*, 516 S.E.2d 449, 452 (S.C. 1992).

**Relevance of company policy.** The court agrees with Defendant that Plaintiff may not rely on *company* policy as establishing *public* policy for purposes of establishing her wrongful

7

termination claim. Plaintiff has not cited and the court has not found any support for such an extension of the wrongful termination claim. Such an extension would, in any event, run counter to the language consistently used by the South Carolina Supreme Court in describing this exception to the doctrine of employment at-will. *See, e.g.*, *Barron,* 713 S.E.2d at 638 (referring to "clear mandate of public policy" and "determination of what constitutes public policy").

**S.C. Code § 43-35-25**. The court is not, at this juncture, persuaded by Defendant's argument that S.C. Code. § 43-35-25 is inapplicable to hospices. For present purposes, therefore, the court assumes without deciding that Title 43's requirements for reporting abuse of vulnerable adults are applicable to nurses working for hospices.[2]

Subsection (C) of S.C. Code § 43-35-25 provides as follows: "A person required to report pursuant to this section is personally responsible for making the report[.]" Subsection (D) provides that the report must be made "within twenty-four hours or the next working day" to one of three

---

[2] Defendant argues that Title 43 has no application to it because Title 44 "specifically addresses hospices" and authorizes the promulgation of regulations specific to hospice facilities and programs. Dkt. No. 11 at 3. Title 44, however, is generally applicable to "Health" and its many chapters govern a broad range of health and environmental issues. Further, the specific regulation on which Defendant relies provides that hospice facilities and programs must comply with all federal, state and local laws. Thus, neither Title 44 nor the hospice licensing regulation appear to preclude application of other generally applicable laws to Defendant.

Title 43, on the other hand, applies generally to "Social Services" and Chapter 35 applies specifically to Adult Protection. Chapter 35's title, the "Omnibus Adult Protection Act," suggests broad application. S.C. Code Ann. § 43-35-5. While, as Defendant notes, "facility" is defined narrowly, other terms such as "caregiver" and "vulnerable adult" are defined broadly. S.C. Code § 43-35-10 (2), (11) ("(2)'Caregiver' means a person who provides care to a vulnerable adult, with or without compensation, on a permanent or full or part-time basis and includes, but is not limited to, a relative, household member, day care personnel, adult foster home sponsor, and personnel of a public or private institution or facility." . . . "(11) 'Vulnerable adult' means a person eighteen years of age or older who has a physical or mental condition which substantially impairs the person from adequately providing for his or her own care or protection. This includes a person who is impaired in the ability to adequately provide for the person's own care or protection because of the infirmities of aging . . . ."). The persons required to report abuse are, moreover, broadly defined and clearly not limited to employees of adult day care centers or "facilities." For example, coroners and law enforcement officers, who are among those listed, would not normally be employees of such entities.

listed entities or programs, depending on where the alleged abuse occurred. The circumstances alleged by Plaintiff suggest that the alleged abuse at issue here should have been reported to "the Adult Protective Services Program." *See* S.C. Code Ann. § 43-35-25 (C), (D).

Plaintiff does not allege that she made any such report. Neither does she allege that she threatened to report the alleged abuse or mistreatment to the Adult Protective Services Program or any other public program or entity. Instead, she alleges only internal reports.

Faced with a similar situation in *Barron*, the South Carolina Supreme Court "declin[ed] to address whether the public policy exception applies when an employee is terminated in retaliation for filing a wage complaint [under the Payment of Wages Act] with the Department of Labor" because the employee had neither filed nor threatened to file a complaint with the Department of Labor. *See Barron*, 713 S.E.2d at 638. She had, instead, only made an internal request for correction of a wage-payment error.

In light of *Barron*, this court concludes that Plaintiff's wrongful termination claim fails as a matter of law to the extent it relies on S.C. Code § 43-35-25 because there is no allegation of a report (or threat to report) abuse to the relevant agency. Absent such an allegation, Plaintiff's claim cannot survive based on this statutory provision even if it evidences a clear mandate of public policy in support of reporting abuse of vulnerable adults.

Plaintiff does not direct the court to any other source of a clear mandate of public policy. Under these circumstances, the court finds that Plaintiff's claim for wrongful termination in violation of public policy fails as a matter of law. *See Barron*, 713 S.E.2d at 638 ("determination of what constitutes public policy is a question of law for the courts to decide.").

**II. Breach of the Implied Warranty of Good Faith and Fair Dealing**

Defendant also moves to dismiss Plaintiff's fourth cause of action which is denominated as a claim for "Breach of [the] Implied Warranty of Good Faith and Fair Dealing." As did Defendant, this court construes the claim as one for breach of the implied *covenant* of good faith and fair dealing.

Defendant argues that this claim should be dismissed because there is no separate cause of action for breach of this covenant. *See* Dkt. No. 5-1 at 9 (citing *Rotec Servs., Inc. v. Encompass Servs., Inc.*, 597 S.E.2d 881, 883 (S.C. Ct. App. 2004)). Although Plaintiff filed a responsive memorandum, she did not offer any opposition to this aspect of Defendant's motion to dismiss.

The court finds Defendant's motion to dismiss Plaintiff's fourth cause of action to be well founded and grants it for the reasons argued by Defendant. While this disposes of the separate cause of action, it does not preclude Plaintiff from relying on the implied covenant of good faith and fair dealing in support of her second cause of action (breach of contract).

## CONCLUSION

For the reasons set forth above, the court grants Defendant's motion and dismisses Plaintiff's first (wrongful termination in violation of public policy) and fourth (breach of the covenant of good faith and fair dealing) causes of action.

**IT IS SO ORDERED.**

      s/ Cameron McGowan Currie
      CAMERON MCGOWAN CURRIE
      UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
April 29, 2013